[Crim. No. 4441. Second Dist., Div. Two. July 14, 1950.]

THE PEOPLE, Respondent, v. DONALD RAFFINGTON, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, Dan Kaufmann, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was accused by an information in one count of attempted abortion and in a second count of abortion. Another information was filed charging him with an additional crime of abortion. The cases were consolidated for trial and a jury found him guilty on all three counts. He was sentenced to the state prison on each count and has appealed from the judgments.*

Defendant contends that his constitutional rights have been infringed, asserting he was denied due process of law and his privileges and immunities were abridged in that: (1) he was charged by an information filed by the district attorney and not by indictment of the grand jury, and (2) that as to count 2 the testimony of witnesses given at his preliminary examination who were not available at the time of trial was read to the jury over his objection. In connection with the latter ground defendant contends that part of subdivision 3 of section 686 of the Penal Code permitting the reading of such testimony is unconstitutional.

These questions have long since been determined adversely to defendant's contention. ██ Neither the Fifth Amendment (*Adamson* v. *California,* 332 U.S. 46, 49 ff. [67 S.Ct. 1672, 91 L.Ed. 1903, 1907, 171 A.L.R. 1223]) nor the Sixth Amendment (*West* v. *Louisiana,* 194 U.S. 258, 262 [24 S.Ct. 650, 48 L.Ed. 965, 969]) nor any other provision of the Bill of Rights (*Wolf* v. *Colorado,* 338 U.S. 25, 26 [69 S.Ct. 1359, 93 L.Ed. 1782, 1784]) places restrictions upon the states in the prosecution of criminal cases. The words "due process of law" in the Fourteenth Amendment do not require an indictment by a grand jury in a prosecution by a state for

---

*Defendant's brief does not conform with rule 15 of the Rules on Appeal (22 Cal.2d 12) in that in the statement of facts, consisting of 108 pages, there is no reference whatsoever to any part of the transcript supporting any alleged statement of fact or quotation of the evidence.

a felony and a conviction upon an information filed by the district attorney does not deprive a defendant of life, liberty or property without due process of law (*Hurtado* v. *California*, 110 U.S. 516, 538 [4 S.Ct. 111, 28 L.Ed. 232, 239]) nor are the privileges and immunities of a citizen abridged by a state law providing for prosecution under an information instead of by indictment by a grand jury. (*Maxwell* v. *Dow*, 176 U.S. 581, 587 [20 S.Ct. 448, 44 L.Ed. 597, 599].)

Due process of law is not denied by the introduction of the deposition of a witness taken upon the preliminary examination before a committing magistrate in the presence of the defendant where he cross-examined or had the opportunity of cross-examining the witness when such witness is absent from the state or the prosecutor has been unable to procure his attendance. (*West* v. *Louisiana, supra*; *People* v. *Schwarz,* 78 Cal.App. 561, 579 [248 P. 990] ; *People* v. *Wilson,* 26 Cal.App. 336, 338 [146 P. 1048] ; *People* v. *Hermes,* 73 Cal.App.2d 947, 955 [168 P.2d 44] ; *People* v. *Valdez,* 82 Cal. App.2d 744, 749 [187 P.2d 74].)

Defendant does not claim he did not cross-examine or at least have the opportunity of cross-examining the witnesses at the preliminary examination. The foundation for the reading of the evidence was sufficiently laid. A witness testified that she was in Minnesota three weeks prior to the trial where she talked to one of the absent witnesses on the telephone and personally saw the other. One of them said she might return to California after the following Christmas but did not know whether she would or not. The other witness did not state when he expected to return, if at all.

The witnesses had appeared when the case was first set for trial and had been instructed to return on the day to which it was continued. In violation of this instruction they departed and remained absent from the state. The prosecution was unable to compel them to return and could not be charged with lack of diligence in procuring their attendance at the trial. Defendant did not offer any evidence to refute that which was offered by the prosecution concerning the absence of the witnesses. In these circumstances the court did not abuse its discretion in permitting the reading of the evidence given at the preliminary examination by the absent witnesses.

Whether it is satisfactorily shown that a witness cannot with due diligence be found within the state is a question of fact to be determined by the trial court from the evidence introduced and an appellate court will not interfere unless

there has been an abuse of discretion in holding that due diligence had been used. (*People* v. *Stewart,* 91 Cal.App.2d 675, 676 [205 P.2d 412]; *People* v. *Bernstein,* 70 Cal.App.2d 462, 468 [161 P.2d 381]; *People* v. *Wohnon,* 61 Cal.App.2d 782, 786 [144 P.2d 100]; *People* v. *Centers,* 56 Cal.App.2d 631, 633-4 [133 P.2d 29]; *People* v. *Cavazos,* 25 Cal.2d 198, 201 [153 P.2d 177]; *People* v. *Hermes, supra.*)

Contrary to defendant's contention, the evidence is sufficient to sustain the verdict and judgment upon all three counts. As to count one, attempted abortion, a man and woman, operatives of the State Medical Board, visited defendant at his office, told him they were husband and wife and that the woman was pregnant. They discussed the cost of the operation and the manner in which defendant would perform it, whether by a jelly injection or "D and C." Upon their objection to the price of $150 named by defendant, he stated he had performed an operation on another woman on the same morning for which he had been paid $600, and showed them cards bearing the names of other girls whom he had aborted. The parties returned on a later date when they handed defendant three $50 bills. He placed the woman on the table, sterilized his instruments and prepared materials for use, which he said would produce an abortion within 24 hours. He manipulated the woman's abdomen, whereupon, by prearranged signal, other officers entered the room. Defendant stated, "You haven't anything on me, I haven't done a pelvic." On demand he removed the three $50 bills from his pocket and handed them to one of the officers. The serial numbers of the bills corresponded with those on the money handed to defendant before he began his preparations. One of the officers called defendant's attention to jars of materials and instruments and asked defendant if he was preparing to use them on the woman and he answered in the affirmative.

Section 274 of the Penal Code as originally enacted in 1872 and in effect until 1935 read: "Every person who provides, supplies, or administers to any [pregnant] woman, or procures any [such] woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years." The words "pregnant" and "such" enclosed in brackets in the above quoted section

were deleted by the amendment enacted in 1935. (Stats. 1935, ch. 528, p. 1605.) Prior to that year proof of pregnancy of the woman operated upon was necessary. (*People* v. *De-Vaughan*, 105 Cal.App. 516, 518 [288 P. 113].) ■ It is no longer necessary since the 1935 amendment to prove the pregnancy of the woman upon whom the operation was performed. (*People* v. *Ramsey*, 83 Cal.App.2d 707, 717 [189 P.2d 802].) Evidence of the *intent* of the accused to procure a miscarriage when not necessary to preserve the woman's life satisfies the requirement of the statute. Defendant's criminal intent is amply established by the foregoing evidence of his acts and admissions.

■ Defendant's contention that he was entrapped is not sustained by the evidence. Entrapment is available as a defense when the criminal design originates with the officer who, by persuasion or deceit, entices a law-abiding citizen to commit a crime which he would not have committed in the absence of such inducement. (*People* v. *Makovsky*, 3 Cal.2d 366, 369 [44 P.2d 536].) There is no evidence that defendant was lured into the attempt to commit a criminal offense by persuasion or inducement. The conversation was between persons who professed to desire the abortion to be performed and defendant, willing to perform upon the payment of his requested fee. In such case enticement or entrapment is not available as a defense. (*People* v. *Cherry*, 39 Cal.App.2d 149, 153 [102 P.2d 546]; *People* v. *Kennedy*, 66 Cal.App.2d 522, 523 [152 P.2d 513].) ■ In the instant case defendant had in his office all the instrumentalities with which abortions are produced. He described another abortion he had performed on the same day and stated the amount paid to him for the operation. He placed the woman operative on the table, palpated her abdomen, sterilized his instruments, and prepared to apply aborticides to her. By his own statements he was habitually engaged in the unlawful enterprise. In his own mind he was ready and willing to commit the crime and only awaited the opportunity and payment of his fee to make use of the appliances which he possessed, ready for use whenever called upon.

■ The overt acts of defendant above described are sufficient to sustain the verdict of guilty of the charge of attempted abortion. Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of the design will constitute an attempt. (*People* v. *Lanzit*, 70 Cal.App. 498, 505 [233 P. 816]; *People* v. *Fiegelman*, 33 Cal.App.2d

100, 105 [91 P.2d 156].) "A specific intent and ineffectual overt act directed at its consummation" are the two elements essential to an attempted crime (*People* v. *Gibson,* 94 Cal.App. 2d 468, 470 [210 P.2d 747]) and both elements are shown by the record to have been present in the instant case.

Defendant's contention that the evidence is insufficient to sustain his conviction upon the charge stated in count 2, in that the evidence of accomplices were not corroborated, is untenable. The prosecutrix and the man who was responsible for her condition went to defendant's office where they discussed the cost of the operation and other details; defendant's fee was paid by the man; defendant performed the operation which resulted in a miscarriage. The evidence of the woman involved in such a case requires corroboration (Pen. Code, § 1108) and that of the man requires corroboration if he is an accomplice of defendant (§ 1111). It is established that the evidence of one is sufficient to corroborate the other since they could not be prosecuted for the same offense, the woman being subject to prosecution under section 275 of the Penal Code and the man under section 274. (*People* v. *Wilson,* 25 Cal.2d 341, 346 [153 P.2d 720]; *People* v. *Clapp,* 24 Cal.2d 835, 838 [151 P.2d 237]; *People* v. *Alvarez,* 73 Cal. App.2d 528, 531 [166 P.2d 896].) It is also established that corroboration may be had in the statements and admissions of the defendant himself. (*People* v. *Wilson, supra,* at p. 347; *People* v. *Tallent,* 89 Cal.App.2d 158, 161 [200 P.2d 214]; *People* v. *Tibbitts,* 35 Cal.App.2d 669, 672 [96 P.2d 812].) In the instant case defendant admitted that the prosecutrix and her male friend visited his office, that he diagnosed her condition as pregnancy, that he treated her vaginal tract and injected a drug for the purpose of having her expel whatever there was in her uterus. He also admitted having received money from the man and of having administered a second treatment to the girl in his office. His contention that he was treating her for an abnormal condition designated as a hydatiform mole was a question for the jury to decide and it rejected his contention.

Evidence of defendant's possession of instruments and medical substances customarily used for the purpose of producing a miscarriage is substantial corroboration of the statements of the witnesses above named. (*People* v. *Lee,* 81 Cal.App. 49, 54 [252 P. 763].)

Contrary to defendant's contention the evidence amply sustains the verdict and judgment as to the offense charged

in the second information, which counsel have referred to as count 3. The complaining witness and another woman visited defendant's office, told him the prosecutrix was pregnant and did not want to have a child; he placed the girl on a table, inserted a speculum in her vaginal tract and worked over her for 45 minutes or longer using instruments and packing her with cotton. He also inserted into her vaginal tract an amber colored substance. He told her that if she passed anything she should bring it back to him the next morning. The same treatment was repeated on four different occasions at defendant's office. As the treatments progressed the girl became too ill to go to his office and he appeared at the home where she was staying and repeated the operation. He had received the sum of $250 from the woman upon their first call at his office. He returned this sum upon his visit to the home where the girl was staying. He then told the mother of the girl that the latter was very ill and he thought she had a ruptured appendix, and made other statements which he knew to be false. Such statements furnished corroboration of the testimony given by the other witnesses. (*People* v. *Ramsey*, 83 Cal.App.2d 707, 717 [189 P.2d 802].)

Defendant assigns as error the giving of the following instruction: ''An essential element of each crime of which the defendant is accused in the Information is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. However this does not mean that one must intend all the consequences of his conduct or that he must know that such conduct is unlawful to be guilty of a public offense such as any of those charged against the defendant in this case. The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully.''

(1) The instruction is one of those requested by defendant himself, designated by number from ''.Caljic''* and he therefore cannot complain of the court's having given it as requested. (*People* v. *Rubio*, 75 Cal.App.2d 697, 710 [171 P.2d 737]; *People* v. *Weston*, 169 Cal. 393, 398 [146 P. 871].)

(2) The instruction is not comparable to those which have been declared to be erroneous in the cases cited by defendant wherein the court instructed that from the mere doing of an

---

*California Jury Instructions, Criminal, West Publishing Co., 1946.

unlawful act the defendant was presumed to have intended all the natural and probable consequences of his act, unless there is evidence on his part to controvert the presumption.

(3) It is a correct statement of the law as applied to the evidence in this case, which we have hereinbefore declared to be sufficient to show a specific intent on the part of the defendant to produce a miscarriage in each of the instances covered by the informations.

Judgments affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 10, 1950. Carter, J., and Schauer, J., voted for a hearing.